ORDERED.

**Dated:  July 28, 2016**

Cynthia C. Jackson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

                                                Case No. 6:15-bk-03655-CCJ

EZE D. UCHE,                                  Chapter 7

        Debtor.
_____/

ORDER DENYING BRANCH BANKING AND TRUST COMPANY'S
MOTION TO DISMISS CHAPTER 7 CASE FOR CAUSE PUSUANT TO 11 U.S.C. § 707(a)

This case came before the Court on October 27, 2015, for trial on Branch Banking and Trust Company's Motion to Dismiss Chapter 7 Case for Cause Pursuant to 11 U.S.C. § 707(a) (Doc. No. 10; the "Motion"), and the Debtor's Response (Doc. No. 19).  By the Motion, Branch Banking and Trust Company ("BB&T") argues that the case should be dismissed because the Debtor filed it in bad faith.  Having considered the pleadings, taken evidence, and heard argument of the parties, the Court denies the Motion for the reasons set forth below.

<u>Background</u>

None of the facts relevant to the Motion are disputed.  The Debtor is a cardiologist.  In June 2008, the Debtor's former medical practice, Eze D. Uche MD. PA (the "Medical Practice"), executed a mortgage in favor of BB&T's predecessor in interest, Colonial Bank.  The mortgage was secured by the office building that housed the Medical Practice, and the Debtor personally guaranteed the mortgage.

The Medical Practice paid on the mortgage for approximately two years before it encountered financial problems.  Namely, when BB&T succeeded Colonial Bank, BB&T stopped accepting any funds that were transferred using a Colonial Bank routing number.  Because the Medical Practice received Medicare funds through a Colonial Bank routing number, the Medical Practice temporarily stopped receiving those funds from the government.  Medicare revenue comprised the majority of the Medical Practice's income.  For these and other reasons,[1] the Medical Practice defaulted on the mortgage.

After the routing number issues were resolved, the Medical Practice once again began receiving Medicare funds, albeit sporadically.  As it received the funds, the Medical Practice made payments on the defaulted mortgage.  Between November 2010 and March 2011, the Medical Practice made payments to BB&T in the amount of $44,563.70, bringing the mortgage current.  Notwithstanding the Medical Practice's cure of the defaulted mortgage, BB&T filed a foreclosure action against the Medical Practice and the Debtor[2] in State Court in April 2011 (the "Foreclosure Action").[3]  Even after BB&T filed the Foreclosure Action, the Medical Practice

---

[1] At trial, BB&T also argued that the Debtor and his medical practice's poor accounts receivable collection practices contributed to the default.
[2] Commander Road Office Park Owner's Association, Inc. was also named as a defendant.
[3] Case styled *Branch Banking and Trust Company v. Eze D. Uche, M.D., P.A., et. al.*, in the Circuit Court of the Fifth Judicial Circuit in and for Lake County, Florida, Case. No. 2011-CA-898.

made monthly mortgage payments between April 2011 and December 2011, totaling $76,394.88. Notably, BB&T returned the December 2011 payment to the Debtor.

In June 2014, BB&T obtained a Default Final Judgment of Foreclosure in the Foreclosure Action. After the judicial sale of the property securing the mortgage (the building housing the Medical Practice and various other office spaces), BB&T moved for a Final Deficiency Judgment against the Medical Practice and, under the guaranty, the Debtor (the "Deficiency Motion"). Two days prior to the final evidentiary hearing on the Deficiency Motion, the Debtor filed the Chapter 7 petition, initiating this case. The hearing on the Deficiency Motion was stayed as to the Debtor but went forward as to the Medical Practice, resulting in a Deficiency Final Judgment in the amount of $739,062.21.

By this Chapter 7 proceeding, the Debtor seeks to discharge just over $1,000,000 in unsecured debt held by nine creditors. BB&T is the largest of those creditors, with its deficiency claim against the Debtor. The Debtor claimed nearly $800,000 in property as exempt, more than half of which secures debt that the Debtor intends to reaffirm. According to Schedules I and J, the Debtor's monthly income and expenses total $15,898.80 and $15,727.71, respectively.

BB&T moves to dismiss the Debtor's bankruptcy case for cause under Section 707(a), arguing that the Debtor filed it in bad faith. In support of the Motion, BB&T sets forth two grounds to establish the Debtor's bad faith. First, BB&T contends that the Debtor filed this case for the primary purpose of delaying and frustrating BB&T's pursuit of a deficiency judgment. Second, BB&T asserts that the Debtor has significant disposable income and the ability to repay his debts.[4]

---

[4] BB&T also argues that the Debtor's significant disposable income and ability to repay his debts create a presumption of abuse in this case. A presumption of abuse arises only under Section 707(b), where a debtor has primarily consumer debts. That is not the case here, where the Debtor has primarily business debts, and BB&T has brought its dismissal motion under Section 707(a).

3

<u>Discussion</u>

Section 707(a) of the Bankruptcy Code provides that a bankruptcy court "may dismiss a case under this chapter only after notice and a hearing and only for cause, including[:]"

> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.[5]

The Bankruptcy Code does not define "for cause," and the three enumerated examples in Section 707(a) are illustrative, not exhaustive.[6]   The moving party bears the burden of showing cause for dismissal under Section 707(a).[7]

The Eleventh Circuit has held that the power to dismiss for cause under Section 707(a) includes the power to dismiss a Chapter 7 case based on prepetition bad faith.[8]   In so holding, the Court determined that, "in light of its inherently discretionary nature, a totality-of-the-circumstances approach is the correct legal standard for determining bad faith under [Section] 707(a)."[9]   A bankruptcy court's dismissal for cause predicated on bad faith may only be overturned for abuse of discretion.[10]   "For this reason, the court should step cautiously when asked to exercise the power to deny a debtor access to its jurisdiction."[11]

---

[5] 11 U.S.C. § 707(a).
[6] *In re Piazza*, 719 F.3d 1253, 1261 (11th Cir. 2013).
[7] *Id*. at 1266 (citing *In re Simmons*, 200 F.3d 738, 743 (11th Cir. 2000)).
[8] *Id*. at 1261.
[9] *Id*. at 1271.
[10] *See id*; *see also In re Kane & Kane*, 406 B.R. 163, 167 (Bankr. S.D. Fla. 2009) ([T]he decision as to whether a debtor acted in bad faith is one entrusted to the court's discretion and may only be overturned for an abuse of that discretion.")
[11] *In re Kane & Kane*, 406 B.R. at 167.

Some courts within this circuit examine enumerated factors established by case law when determining whether the totality of the circumstances reveal bad faith.[12]  Indeed, both BB&T's Motion and the Debtor's Response revolve entirely around the application of those factors to the facts of the present case.  What neither party recognizes, however, is that the Eleventh Circuit expressly declined to adopt the multifactor test in *Piazza*.[13]

Acknowledging that bad faith does not lend itself to a strict formula,[14] the Eleventh Circuit concluded that such a determination is instead a fact-intensive judgment that is "subject to judicial discretion under the circumstances of each case."[15]  This totality-of-the-circumstances inquiry looks for "atypical" conduct that falls short of the "honest and forthright invocation of the [Bankruptcy] Code's protections."[16]  Specifically, the Eleventh Circuit endorses an inquiry where "bad faith is ultimately evidenced by the debtor's deliberate acts or omissions that constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code."[17]

This Court applauds the Eleventh Circuit's rejection of the multifactor test and agrees that adhering to a list of factors to determine the existence of bad faith is problematic.  The difficulties that accompany the multifactor test were aptly described by Judge Kimball in *Kane & Kane*:

> In an effort to focus the bad faith analysis, reported decisions point to various factors that tend to support or negate a debtor's alleged bad faith. These factors are helpful only to a point. The circumstances of each debtor are unique, and the proper weight given to each fact necessarily depends on all of the other facts presented. A list of factors provides only the appearance of a

---

[12] *See In re Baird*, 456 B.R. 112, 116-17 (Bankr. M.D. Fla. 2010) (quoting *United States v. McDaniel (In re McDaniel)*, 363 B.R. 239, 244 (M.D. Fla. 2007)).
[13] *See In re Piazza*, 719 F.3d at 1272.
[14] *Id*. at 1271 (citing *Natural Land Corp. v. Baker Farms, Inc. (In re Natural Land Corp.),* 825 F.2d 296, 298 (11th Cir. 1987) (noting "there is no particular test for determining whether a debtor has filed ... in good faith")).
[15] *Id*. (quoting *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.),* 749 F.2d 670, 674 (11th Cir. 1984)).
[16] *Id*. at 1271 (internal citations omitted).
[17] *Id*. at 1272 (internal quotations and citations omitted).

reliable test. It implies a scientific or mathematical certainty in the analysis, which it most certainly lacks.

Many of the factors relied on by the courts in determining whether a debtor acted in bad faith in filing a petition find their genesis in decisions considering dismissal in the context of Chapter 11 and Chapter 13 cases. These factors have less and perhaps no weight in the Chapter 7 context. A Chapter 7 debtor's powers and duties under the Bankruptcy Code, its relationship with its creditors, and the overall nature of a Chapter 7 liquidation case, materially differ from a Chapter 11 or Chapter 13 case.

…

In light of the substantial differences between Chapter 7, on the one hand, and Chapters 11, 12, and 13, on the other, facts that indicate bad faith in a Chapter 11, 12, or 13 case do not necessarily support a finding of bad faith in a Chapter 7 case of the same debtor.[18]

Reliance on a multifactor test to establish bad faith as cause for dismissal is particularly troubling where many of the factors go to a debtor's ability to pay his debts.[19] Indeed, "[a] dismissal based upon a debtor's ability to pay is expressly prohibited by the legislative history of Section 707(a)."[20] In enacting Section 707(a), Congress unequivocally stated that "[t]he Section does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal."[21] This stands in stark contrast to Section 707*(b)*, which provides a mechanism for dismissal of a Chapter 7 case where the debts at issue are primarily consumer debts:

Section 707(b) contains a detailed mathematical formula that courts are to utilize to determine whether the debtor has the ability to pay a significant portion of the debtor's unsecured claims. As part of the analysis, the debtor is not allowed to use his or her actual expenses; rather, the debtor's expenses are calculated based upon standards established by the Internal Revenue Service. If the math fits, there is a presumption of abuse, and the debtor has a

---

[18] *In re Kane & Kane*, 406 B.R. at 167-68 (internal citations omitted).

[19] *See In re Bushyhead*, 525 B.R. 136, 148 (Bankr. N.D. Okla. 2015).

[20] *In re Baird*, 456 B.R. at 117 (internal quotations and citations omitted).

[21] *In re Bushyhead*, 525 B.R. at 141-42 (quoting H.R.Rep. No. 95–595, at 380 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6336; S.Rep. No. 95–989, at 94 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5787, 5880).

> choice: either rebut the presumption, convert the case to Chapter
> 13, or face dismissal. Not so under § 707(a).[22]

Thus, under the Eleventh Circuit's standard for determining bad faith, a bankruptcy filing will withstand an allegation of bad faith where a debtor has not, by deliberate act or omission, misused or abused the "provisions, purpose, or spirit of the Bankruptcy Code."[23] "The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'"[24] A fresh start is facilitated by allowing a debtor to discharge all dischargeable debts while retaining assets that are exempt.[25] As such, preserving property and receiving a discharge of dischargeable debt are valid purposes for filing a bankruptcy case.

Additionally, where a debtor has insufficient funds to meet his obligations, this is an obvious reason to file a Chapter 7 petition.[26] A Chapter 7 petition is, to a great extent, equivalent to throwing oneself on the mercy of the bankruptcy court:

> The debtor is surrendering to his or her creditors. The estate is
> then collected and distributed to all creditors in a fair and equitable
> manner, consistent with the Bankruptcy Code.[27]

Indeed, under some circumstances, dismissal of a Chapter 7 case would only serve to favor some creditors over others.[28]

Despite BB&T's allegations to the contrary, the facts of this case are in *no way* similar to the facts in *Piazza*. Here, there is no evidence that the Debtor has transferred assets or paid the debts of insiders to BB&T's detriment. Nor is there any indication that the Debtor has failed to make candid and full disclosure in this bankruptcy case. It is true that BB&T's deficiency claim comprises the majority of the Debtor's unsecured debt. However, the fact that the Debtor's

---

[22] *Id.* at 141 (internal citations omitted).
[23] *See In re Piazza* at 1272 (internal quotations and citations omitted).
[24] *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner,* 498 U.S. 279, 286 (1991)) (internal quotations omitted).
[25] *In re Taylor*, 3 F.3d 1512, 1516 (11th Cir. 1993).
[26] *See In re Kane & Kane*, 406 B.R. at 169.
[27] *Id.* at 170.
[28] *See id.*

bankruptcy filing was preceded by BB&T's pursuit of a deficiency judgment is not determinative of bad faith.

"Almost every bankruptcy case is filed because a creditor is pursuing a debtor, whether it be calls from debt collectors, repossessions, suits on unsecured debt, or residential foreclosures."[29]   Indeed, if filing bankruptcy to avoid the payment of a debt was cause for dismissal, no debtor would ever be able file a bankruptcy case.   Here, the Medical Practice made payments toward the mortgage for more than two years before defaulting and continued making payments even after the default.   It cannot, therefore, reasonably be said that the Debtor made no effort to repay the debt.

The Debtor now seeks to discharge an indebtedness in excess of $1,000,000.   Creditors other than BB&T hold more than a quarter of a million dollars of this debt.   While not insignificant, the Debtor simply possesses insufficient unencumbered assets and income to meet his obligations.   Moreover, the Debtor's income is of little importance where his debts are primarily business debts, and BB&T has (and only could have) moved for dismissal under Section 707(a).[30]   By filing this Chapter 7 case, the Debtor has effectively tendered all of his non-exempt assets to his creditors.[31]   Accordingly, to dismiss this case would serve only to favor BB&T over other creditors.[32]

<u>Conclusion</u>

For these reasons, it is ORDERED that the Motion is denied.

Attorney Mychal J. Katz is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of this order.

---

[29] *In re Bushyhead*, 525 B.R. at 149.
[30] *See In re Baird*, 456 B.R. at 117 (internal quotations and citations omitted).
[31] *See In re Kane & Kane*, 406 B.R. at 170.
[32] *See id.*